James R. Davis (MA #649750; SC #100358; *pro hac vice*)
J. DAVIS LAW FIRM, P.C.
BB&T Plaza, Mail Stop Box 16
234 Seven Farms Drive, Suite 211B
Charleston, South Carolina 29492
Telephone: 800.983.0455
Facsimile: 800.983.0153
Email: jim@jdavispc.com

Christopher R. Kaup, State Bar No. 014820

**TB** T I F F A N Y & B O S C O
P.A.

Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
Email: crk@tblaw.com. ttl@tblaw.com

*Attorneys for Alan J. Bankart*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>JIN W. HO *and* JEANNETTE LING HO<br><br>Debtors.<br>————————————————<br>ALAN J. BANKART,<br><br>Plaintiff,<br><br><br>JIN W. HO and JEANNETTE LING HO, husband and wife *individually*.<br><br>Defendants. | Chapter 11<br><br>Case No.: 2:14-bk-07642-MCW<br><br>Adversary No. 2:14-ap-00702-MCW<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT, PURSUANT TO**<br><br>11 U.S.C. §§ 523(a)(2)(A)&(B)<br>11 U.S.C. § 523(a)(4)<br>11 U.S.C. § 523(a)(6)<br>11 U.S.C. §§ 523(a)(19)(A)&(B) |

## COMPLAINT

Alan J. Bankart, ("Mr. Bankart"), by way of complaint ("Complaint") against Jin W. Ho and Jeannette Ling Ho, ("Defendants"), brings this adversarial proceeding to obtain a Judgment declaring the debt owed to Mr. Bankart is non-dischargeable, pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. §§ 523(a)(2)(A)&(B), (a)(4), (a)(6) *and* (a)(19)(A)&(B), *et. seq.* This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### THE PARTIES

1.      Plaintiff, Mr. Bankart, is an individual residing at 1 Weetamo Road, Nantucket County, Commonwealth of Massachusetts. Mr. Bankart is a creditor in the Bankruptcy Estate having an unsecured Claim in excess of $2,824,652.39. (C.R. # 8).

2.      Defendant, Jin W. Ho, ("Mr. Ho" or "Defendant"), is a Debtor in the above-captioned Bankruptcy Case. On information and belief, Mr. Ho resides at 6838 N. Rocking Road, Scottsdale, Maricopa County, Arizona 85250; and, at all relevant times to the allegations in this Complaint, Mr. Ho was a resident of Arizona.

3.      Defendant, Jeannette Ling Ho, ("Mrs. Ho" or "Defendant"), is a Debtor in the above-captioned Bankruptcy Case. On information and belief, Mrs. Ho resides at 6838 N. Rocking Road, Scottsdale, Maricopa County, Arizona 85250; and, at all relevant times to the allegations in this Complaint, Mrs. Ho was a resident of Arizona.

4.      At all relevant times, the Defendants were married and each acted for the benefit and on behalf of their marital community.

### The Non-Party Participants

5.      Edge Capital Management, LLC, ("ECM"), on information and belief, is a duly organized Arizona limited liability company having a principal place of business at 4455 E. Camelback Road, Scottsdale, Maricopa County, Arizona 85018. ECM is a *self*-styled investment advisory firm.

6. Edge Capital Management, I, LLC, ("ECM-I"), on information and belief, is a duly organized Arizona limited liability company having a principal place of business at 4455 E. Camelback Road, Scottsdale, Maricopa County, Arizona 85018. ECM-I is a *self*-styled investment advisory firm.

7. Edge Capital Management, II, LLC, ("ECM-II"), on information and belief, is a duly organized Arizona limited liability company having a principal place of business at 4455 E. Camelback Road, Scottsdale, Maricopa County, Arizona 85018. ECM-II is a *self*-styled investment advisory firm.

8. Edge Asset Management, LLC, ("EAM"), on information and belief, is a duly organized Arizona limited liability company having a principal place of business at 4455 E. Camelback Road, Scottsdale, Maricopa County, Arizona 85018. EAM is a *self*-styled investment advisory firm.

9. Equity Consulting Services, LLC, ("ECS"), on information and belief, is a duly organized Arizona limited liability company having a principal place of business at 4455 E. Camelback Road, Scottsdale, Maricopa County, Arizona 85018. ECS is a *self*-styled investment advisory firm.

10. ECM, ECM-I, ECM-II, EAM, and ECS are hereinafter referred to as the Ho Entities.

**JURISDICTION AND VENUE**

11. On May 20, 2014, ("Petition Date"), the Defendants filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Arizona.

12. This Court has jurisdiction over this adversarial proceeding, and over the parties and the subject matter of the instant claims, pursuant to 28 U.S.C. §§ 157 and 1334.

13. Venue in this Court is proper in the District of Arizona pursuant to 28 U.S.C. §§ 1408 and 1409.

## ALLEGATIONS RELATING TO ALL COUNTS
### The Relevant Background

14.　　In April 2006, Mr. Ho solicited Mr. Bankart to make an investment of $2,000,000.00 in a limited liability company managed and controlled by Mr. Ho.

15.　　As described by Mr. Ho, the investment was to be used *solely* to purchase investment properties.

16.　　To induce Mr. Bankart to invest $2,000,000.00, Mr. Ho told Mr. Bankart that the Ho Entities and the Defendants had already raised $50,000.000.00 from another investor for the purported investment properties.

17.　　In further persuading Mr. Bankart to invest, Mr. Ho represented to Mr. Bankart that a 35% internal rate of return was reasonable.

18.　　To further persuade Mr. Bankart, Mr. Ho prepared and presented to Mr. Bankart a "securities offering" and subscription agreement ("Subscription Agreement").

19.　　On information and belief, Mr. Ho then formed ECM-I as the investment conduit in which Mr. Bankart's funds were to be placed.

20.　　At all relevant times, Mr. Ho occupied and maintained sole management and control of ECM-I.

21.　　Lured by Mr. Ho's representations, in June 2006, Mr. Bankart transferred $2,000,000.00 to ECM-I in two separate installments. The first installment of $1,000,000.00 was sent by wire transfer to ECM-I on April 14, 2006. The second installment of $1,000,000.00 was sent by wire transfer to ECM-I on April 21, 2006.

22.　　On April 21, 2010, immediately on receipt of Mr. Bankart's $2,000,000.00, the Defendants began converting Mr. Bankart's $2,000,000.00 away from ECM-I to the Defendants by way of negotiating fifty (50) checks made payable to "Jin Ho" *individually* for personal purposes, without investing any of the money as had been represented. Exhibit A.

23.　　The Defendants then abandoned ECM-I, vacated their purported place of business, and refused to account for the use made of Mr. Bankart's money.

24. Afterwards, Mr. Ho periodically updated Mr. Bankart by telephone telling Mr. Bankart the success of the investment(s) lay in "future" deals; when, in fact, no investment(s) were ever made.

25. On information and belief, the Defendants never intended to make any investments in investment property; but rather intended to, and did, embezzle Mr. Bankart's money for the Defendants own personal use.

26. At all relevant times, Mr. Ho represented to Mr. Bankart the purported investments were going well, or were otherwise safeguarded for "future" deals; notwithstanding, Mr. Ho had already looted ECM-I of all of Mr. Bankart's money, by his own hand, by signing checks payable to himself.

27. Mr. Ho did not provide any accounting or financial statements showing the use made of Mr. Bankart's money.

28. Mr. Ho later revealed that he never got the $50,000,000.00 that he claimed he had in hand ready to invest when he persuaded Mr. Bankart to invest the $2,000,000.00.

29. As time passed, Mr. Ho became less communicative; and, ultimately, unreachable.

30. Mr. Ho's last conversation with Mr. Bankart was in January 2009. At that time, Mr. Ho reassured Mr. Bankart that he should continue to "hang in there."

**The State Court Litigation**

31. On or about May 12, 2009, Mr. Bankart filed a Complaint asserting claims for, inter alia, securities registration violations, securities fraud, consumer fraud and fiduciary fraud, in the Maricopa County Superior Court, case no. CV2009-0151181 ("State Action"). A true and accurate copy of the complaint in the State Action is attached hereto as Exhibit B.

32. On or about March 22, 2010, Mr. Bankart and the Defendants entered into a stipulated settlement agreement ("Agreement") and consent Judgment ("Judgment") on all counts. A true and accurate copy of the Agreement and Judgment is attached hereto as Exhibit C.

33.     The Agreement and Judgment conditions provided for the Defendants to repay Mr. Bankart in installment payments pursuant to the terms of a promissory note ("Note") in the amount of $1,907,500.00, plus interest at the statutory rate of ten percent (10%) per annum. A true and accurate copy of the Note is attached hereto as <u>Exhibit</u> <u>D</u>.

34.     The Note provides for the Defendants to repay Mr. Bankart his attorney fees, costs and expenses incurred in collection on the Note, and these proceedings. <u>Id</u>.

35.     Defendants failed to make any payments on the Note whatsoever, despite the substantial financial ability to make installment payments.

36.     On or about March 19, 2012, Mr. Bankart commenced supplementary proceedings to enforce the Judgment as against the Defendants, to no avail.

37.     The Defendants neglected, failed or otherwise refused, to comply with several discovery requests, subpoenas *duces tecum*, or appear for their judgment debtor examination(s).

38.     On May 20, 2014, the Defendants filed the instant Chapter 11 Voluntary Petition now before this Court.

39.     On August 8, 2014, Mr. Bankart filed a Proof of Claim in this action in the amount $2,824,652.39 (the "Debt"). (C.R. # 8).

40.     On August 13, 2014, this Court issued an Order commanding the Defendants to appear for examination and to produce documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.

41.     At all relevant times, Defendant, Mr. Ho, was an insider and/or affiliate or controlling member of ECM, ECM-I, ECM-II, EAM and ECS.

42.     The Plaintiff is informed, and therefore believes, and discovery will show, that Mr. Ho, and the Ho Entities, and other persons and entities, collaborated with the Defendants to convert and conceal Mr. Bankart's money. Mr. Bankart therefore expressly reserves his right to amend these pleadings on discovery of new information, accordingly.

## The Defendants' Bank Accounts

43. On information and belief, on and prior to the Petition Date, ECM-I held one or more deposit accounts at JP Morgan Chase Bank, N.A., (each a "Chase Bank Account"). Mr. Bankart is informed, and therefore alleges, the Chase Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

44. On information and belief, on and prior to the Petition Date, Mr. Ho held one or more deposit accounts at JP Morgan Chase Bank, N.A. Mr. Bankart is informed, and therefore alleges, the Chase Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

45. On information and belief, on and prior to the Petition Date, Mrs. Ho held one or more deposit accounts at JP Morgan Chase Bank, N.A. Mr. Bankart is informed, and therefore alleges, the Chase Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

46. On information and belief, on and prior to the Petition Date, the Defendants, each individually, held one or more deposit accounts at Fidelity Investments, N.A., (each a "Fidelity Bank Account"). Mr. Bankart is informed, and therefore alleges, the Fidelity Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

47. On information and belief, on and prior to the Petition Date, the Defendants, each individually, held one or more deposit accounts at Wells Fargo Bank, N.A., (each a "Wells Fargo Bank Account"). Mr. Bankart is informed, and therefore alleges, the Wells Fargo Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

48. On information and belief, on and prior to the Petition Date, the Defendants, each individually, held one or more deposit accounts at City National Bank of Beverly Hills, N.A., (each a "Beverly Hills Bank Account"). Mr. Bankart is informed, and therefore alleges, the Beverly Hills Accounts were among the principal mechanisms or vehicles through which the Defendants, and their affiliates, perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

49. On information and belief, on and prior to the Petition Date, Mr. Ho held one or more deposit accounts at First Hawaiian Bank, N.A., (each a "First Hawaiian Bank Account"). Mr. Bankart is informed, and therefore alleges, the First Hawaiian Bank Accounts were among the principal mechanisms or vehicles through which the Defendants, and their affiliates, perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

50. On information and belief, on and prior to the Petition Date, Mr. Ho held one or more deposit accounts at Pensco Trust Company (each a "Pensco Bank Account"). Mr. Bankart is informed, and therefore alleges, the Pensco Bank Accounts were among the principal mechanisms or vehicles through which the Defendants perpetrated and committed the frauds and other unlawful acts, errors and omissions alleged herein.

**Edge Capital Management, I, LLC**

51. On information and belief, Mr. Ho organized ECM-I in June 2006.

52. On or about April 21, 2006, Mr. Ho opened a deposit-checking account for ECM-I with Chase Bank having account number 717778484 (the "'8484 Account").

53. Mr. Ho directed Mr. Bankart to deposit by wire transfer Mr. Bankart's $2,000,000.00 investment into the '8484 Account.

54. Mr. Bankart is informed, and therefore believes, the Defendants made no financial contribution to ECM-I to fund ECM-I's investments or operations.

55. Mr. Bankart is informed, and therefore believes, no person other than Mr. Bankart made any financial contribution to ECM-I to fund ECM-I's investments or operations.

56.     Mr. Bankart is informed, and therefore believes, the only funds deposited into the ECM-I bank account(s) were Mr. Bankart's $2,000,000.00.

57.     On April 21, 2006, Mr. Ho caused ECM-I to transfer $125,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 999992. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

58.     On May 24, 2006, Mr. Ho caused ECM-I to transfer $30,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1007. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

59.     On May 25, 2006, Mr. Ho caused ECM-I to transfer $25,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1008. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

60.     On June 20, 2006, Mr. Ho caused ECM-I to transfer $50,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1009. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

61.     On July 01, 2006, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1016. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

62.     On July 07, 2006, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1015. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

63.     On July 04, 2006, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1014. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

64.     On July 23, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1017. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

65. On July 25, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1018. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

66. On July 25, 2006, Mr. Ho caused ECM-I to transfer $10,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1019. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

67. On August 02, 2006, Mr. Ho caused ECM-I to transfer $25,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1021. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

68. On August 31, 2006, Mr. Ho caused ECM-I to transfer $100,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1023. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

69. On August 31, 2006, Mr. Ho caused ECM-I to transfer $50,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1022. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

70. On September 26, 2006, Mr. Ho caused Edge Capital Management, LLC ("ECM") to transfer $50,000.00 of ECM's property from ECM's Chase Bank Account number 703970335 ("'335 Account") to Mr. Ho *personally* by check number 634. Mr. Ho caused and/or permitted ECM to employ the use of electronic and telephone communications, electronic wire transmissions, the United States mails, and/or other means of interstate commerce to effectuate and accomplish the foregoing transfer. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

71. On October 06, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1028. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

72.     On October 06, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1023. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

73.     On October 06, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1030. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

74.     On October 05, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1027. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

75.     On October 05, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1026. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

76.     On October 05, 2006, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1031. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

77.     On December 10, 2006, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1033. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

78.     On December 10, 2006, Mr. Ho caused ECM-I to transfer $315,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1032. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

79.     On December 28, 2006 Mr. Ho caused ECM-I to transfer $30,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1036. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

80.     On January 04, 2007, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1037. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

81.     On January 10, 2007, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1038. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

82.     On January 22, 2007, Mr. Ho caused ECM-I to transfer $25,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1040. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

83.     On January 30, 2007, Mr. Ho caused ECM-I to transfer $30,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1043. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

84.     On February 20, 2007, Mr. Ho caused ECM-I to transfer $25,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1044. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

85.     On February 23, 2007, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1045. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

86.     On March 13, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1048. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

87.     On March 14, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1049. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

88. On March 22, 2007, Mr. Ho caused ECM-I to transfer $40,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1051. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

89. On April 14, 2007, Mr. Ho caused ECM-I to transfer $7,500.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1054. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

90. On April 26, 2007, Mr. Ho caused ECM-I to transfer $12,500.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1153. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

91. On April 25, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1152. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

92. On April 29, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1154. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

93. On May 19, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1157. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

94. On May 29, 2007, Mr. Ho caused ECM-I to transfer $50,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1158. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

95. On June 14, 2006, Mr. Ho caused ECM-I to transfer $12,500.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1160. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

96. On June 18, 2007, Mr. Ho caused ECM-I to transfer $10,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1161. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

97. On June 30, 2007, Mr. Ho caused ECM to transfer $32,000.00 of ECM's property from the '335 Account to Mr. Ho *personally* by check number 706. Mr. Ho caused and/or permitted ECM to employ the use of electronic and telephone communications, electronic wire transmissions, the United States mails, and/or other means of interstate commerce to effectuate and accomplish the foregoing transfer. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

98. On July 07, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1163. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

99. On July 30, 2007, Mr. Ho caused ECM-I to transfer $35,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1165. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

100. On August 01, 2007, Mr. Ho caused ECM-I to transfer $20,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1055. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

101. On August 15, 2007, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1166. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

102. On September 01, 2007, Mr. Ho caused ECM-I to transfer $40,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1167. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

103.     On September 05, 2007, Mr. Ho caused ECM-I to transfer $30,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1002. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

104.     On September 21, 2007, Mr. Ho caused ECM-I to transfer $15,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1003. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

105.     On October 04, 2007, Mr. Ho caused ECM-I to transfer $10,000.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1169. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

106.     On October 05, 2007, Mr. Ho caused ECM-I to transfer $22,500.00 of ECM-I's property from the '8484 Account to Mr. Ho *personally* by check number 1004. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

107.     As a direct result of the foregoing, Mr. Ho caused and/or permitted ECM-I and ECM to employ the use of electronic and telephone communications, electronic wire transmissions, the United States mails, and/or other means of interstate commerce to transfer $1,627,000.00. On information and belief, the original funding source of the foregoing transfer was Mr. Bankart's investment.

108.     On information and belief, and discovery with show, the Defendants caused the remaining $373,000.00 to be transferred, by use of electronic and telephone communications, electronic wire transmissions, the United States mails, and/or other means of interstate commerce. On information and belief, the original funding source of the $373,000.00 foregoing transfer was Mr. Bankart's investment.

109.     On information and belief, the Defendants embezzled Mr. Bankart's entire $2,000,000.00 from ECM-I by way of negotiating fifty (50) checks payable to Mr. Ho, *individually.*

110.     On information and belief, and discovery will show, the Defendants formed ECM-I solely to create a vehicle to embezzle by false pretenses Mr. Bankart's $2,000,000.00.

### The Defendants' Financial Assets and Ability
### To Satisfy the Judgment and/or Make Installment Payments on the Note

111.     At all relevant times, the Defendants told Mr. Bankart they were insolvent, or otherwise unable to make any payments on the Judgment and/or Note.

112.     On information and belief, and discovery will show, at all relevant times the Defendants had the ability to make installment payment(s) on the Judgment and/or Note, in part or whole.

### The Defendants' Adjusted Gross Income
(post-Judgment)

113.     On information and belief, the Defendants prepared and did jointly file with the Internal Revenue Service ("IRS") the Defendants' 2010 United States Individual Income Tax Return Form 1040 showing income of $721,533.00; and adjusted gross income of $538,300.00. Exhibit F.

114.     On information and belief, the Defendants prepared and did jointly file with the Internal Revenue Service ("IRS") the Defendants' 2011 United States Individual Income Tax Return Form 1040 showing income of $288,166.00, and adjusted gross income of $225,366.00. Exhibit G.

115.     On information and belief, the Defendants' income (adjusted gross) for the tax year 2010 and 2011 totaled $763,666.00.

116.     Despite the ability to make installment payments to Mr. Bankart, the Defendants made no payments on the Judgment or Note.

The Defendants' Tax Refund Income
(post-Judgment)

117. On August 5, 2011, the United State Treasury issued the Defendants a check (the "Ogden Tax Refund") bearing check number 2310 82426683 in the amount $11,191.32 payable to the Defendants. <u>Exhibit H</u>.

118. On or about August 21, 2012, on information and belief, the Defendants negotiated the Ogden Tax Refund by endorsement payable to the Defendants' personal bank account. <u>Id</u>.

119. On October 12, 2011, the United State Treasury issued the Defendants a check (the "Fresno Tax Refund-1") bearing check number 3158 00287960 in the amount $23,104.00 payable to the Defendants. <u>Id</u>.

120. On or about October 30, 2012, on information and belief, the Defendants negotiated the Fresno Tax Refund-1 by endorsement payable to the Defendants' personal bank account. <u>Id</u>.

121. On September 14, 2012, the United State Treasury issued the Defendants a check (the "Fresno Tax Refund-2") bearing check number 3158 39273977 in the amount $18,230.00 payable to the Defendants. <u>Id</u>.

122. On or about September 30, 2012, on information and belief, the Defendants negotiated the Fresno Tax Refund by endorsement payable to the Defendants' personal bank account. <u>Id</u>.

123. On September 9, 2008, the State of Hawaii issued the Defendants a check ("Hawaii Tax Refund") bearing check number 000145 in the amount $18,538.00 payable to the Defendants. <u>Id</u>.

124. On or about September 15, 2008, on information and belief, the Defendants negotiated the Hawaii Tax Refund by endorsement payable to the Defendants' personal bank account.

During the relevant post-Judgment period, the Defendants' tax refunds totaled $71,063.32. <u>Id</u>.

The Defendants' Additional Income
(post-Judgment)

125. In October 2008, Mr. Ho accepted $100,000.00 from Messrs. Wagner by Fidelity Investments check number 1136. <u>Exhibit</u> <u>I</u>.

126. In December 2008, the Defendants accepted $1,000.00 from Marvin T. Ling by Chase Bank check number 136. <u>Id</u>.

127. In March 2009, Mrs. Ho accepted $20,000.00 from Marvin T. Ling by Chase Bank check number 154. <u>Id</u>.

128. In March 2009, Mrs. Ho accepted $30,000.00 from Christine Chou by Wells Fargo Bank check number 6689. <u>Id</u>.

129. In March 2009, Mrs. Ho accepted $15,000.00 from Christine Chou by Wells Fargo Bank check number 6699. <u>Id</u>.

130. In January 2010, Mr. Ho accepted $2,358.07 from Peregrine Capital, LLC, by Chase Bank check number 1025. <u>Id</u>.

131. In March 2010, Mr. Ho accepted $75,000.00 from Mr. Jeffrey Carp by Bank of America check number 101. <u>Id</u>.

132. In March 2010, Mrs. Ho accepted $12,500.00 from Marvin T. Ling by Chase Bank check number 200. <u>Id</u>.

133. In April 2010, Mrs. Ho accepted $10,000.00 from Marvin T. Ling by Chase Bank check number 252. <u>Id</u>.

134. In May 2010, Mrs. Ho accepted $20,000.00 from Marvin T. Ling by Chase Bank check number 258. <u>Id</u>.

135. In October 2010, Mrs. Ho accepted $13,000.00 from Marvin T. Ling by Chase Bank check number 222. <u>Id</u>.

136.     On November 18, 2010, Mr. Ho accepted $23,664.00 from Weeden Investors, L.P. by Citi Bank, F.S.B Connecticut check number 134141. Id.

137.     In January 2011, the Defendants accepted $10,000.00 by way of a cashier's check drawn on Wells Fargo Bank, N.A., bearing check number 0601508632. Id.

138.     In January 2011, the Defendants accepted $10,000.00 by way of a cashier's check drawn on Wells Fargo Bank, N.A., bearing check number 0601508633. Id.

139.     In January 2011, the Defendants accepted $10,000.00 by way of a cashier's check drawn on Wells Fargo Bank, N.A., bearing check number 0601508634. Id.

140.     In March 2011, Mrs. Ho accepted $3,000.00 from Marvin T. Ling by Chase Bank check number 228. Id.

141.     In March 2011, Mr. Ho accepted $16,455.00 from Weeden Investors, L.P. by Citi Bank, F.S.B Connecticut check number 034468. Id.

142.     In March 2011, Mr. Ho accepted $4,643.76 from Weeden Investors, L.P. by Citi Bank, F.S.B Connecticut check number 034711. Id.

143.     In May 2011, Mrs. Ho accepted $10,000.00 from Marvin T. Ling by Chase Bank check number 267. Id.

144.     In April 2011, Mr. Ho accepted $7,839.00 from the Dole Food Company by Wells Fargo Check number 00220141. Id.

145.     In May 2011, Mrs. Ho accepted $3,000.00 from Marvin T. Ling by Chase Bank check number 271. Id.

146.     In June 2011, Mrs. Ho accepted $20,000.00 from Marvin T. Ling by Chase Bank check number 101. Id.

147.     In December 2011, the Defendants accepted $1,200.00 from Marvin T. Ling by Chase Bank check number 126. Id.

148.     In March 2012, Mrs. Ho accepted $600.00 from Marvin T. Ling by Chase Bank check number 231. Id.

149.     In May 2012, Mrs. Ho accepted $32,000.00 from Marvin T. Ling by Chase Bank check number 241. Id.

150.     In May 2012, Mrs. Ho accepted $25,000.00 from Marvin T. Ling by Chase Bank check number 238. Id.

151.     In May 2012, Mr. Ho accepted $5,500.00 from the Betty L. Ho Trust DTD 11/23/91 Wallace AU Successor-Trustee by First Hawaiian Bank check number 1002. Id.

152.     In July 2012, Mrs. Ho accepted $10, 000.00 from Marvin T. Ling by Chase Bank check number 257. Id.

153.     In August 2012, Mrs. Ho collected $10,000.00 from Marvin T. Ling by Chase Bank check number 262. Id.

154.     In August 2012, Mrs. Ho collected $20,000.00 from Marvin T. Ling by Chase Bank check number 263. Id.

155.     In October 2012, Mr. Ho accepted $6,500.00 from the Betty L. Ho Trust DTD 11/23/91 Wallace AU Successor-Trustee by First Hawaiian Bank check number 1003.

156.     As set forth above, the relevant period during which the Defendants repeatedly told Mr. Bankart that they had no money to make any payments on the Judgment and Note, the Defendants accepted $529,259.83 in additional income ("Additional Income").

157.     On information and belief, and discovery will show, the $529,259.83 Additional Income the Defendants accepted comprises the $373,000.00 unaccounted for in ECM-I Chase Bank Account (at paragraph 108 above).

158.     On information and belief, the original funding source of the foregoing Additional Income was, in part or in whole, Mr. Bankart's investment.

159.     In all events, the Defendants had the ability to make installment payments on the Judgment and Note, as they had agreed, but did not.

## The Defendants' Lifestyle
### (post-Judgment)

160.     Between 2009 uninterrupted through 2013, the Defendants financially supported a lifestyle that included (i) a private 6,500 sq-foot residence having a lease rate of $10,000.00 per month (approx. $480,000.00 over four years); and, (ii) private school tuition for their three minor children costing $60,000.00 per year (approx. $240,000.00 over four years).  See, *e.g.,* Mr. Ho Dep. 91:11-91:21; Mrs. Ho Dep. 75:23-77:13.

161.     On information and belief, and discovery will show, between April 2009 and December 2013, the Defendants spent in excess of $250,000.00 on various credit card payments.

162.     On information and belief, and discovery will show, that post-Judgment, the Defendants spent $720,000.00 (approx.) on lease payments and private school tuition.

163.     Despite the Defendants ability to make installment payments on the Note to Mr. Bankart, as agreed, the Defendants made no payments; while, simultaneously, they repeatedly told Mr. Bankart, in writings and otherwise, they were insolvent and unable to make any payments.

164.     The Defendants made these false statements and writings while maintaining a $250,000.00 a year lifestyle living on Mr. Bankart's money.

## **COUNT I**
### Fraud, Misrepresentation and False Pretenses
### 11 U.S.C. § 523(a)(2)(A)

165.     The Plaintiff repeats and incorporates by reference the allegations set forth in each of the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

166.     The Defendants made one or more intentional misrepresentations of material fact and/or fraudulent omissions for the purpose of inducing Mr. Bankart to invest $2,000,000.00 – *namely:* Mr. Ho represented to Mr. Bankart that he would (i) utilize Mr. Bankart's $2,000,000.00

1  investment in ECM-I to make real estate investments, and that he already had (ii) $50,000,000.00

2  committed by another investor. These representations were false.

3  167.  The Defendants represented to Mr. Bankart at execution of the Settlement

4  Agreement that ECM-I's investments had "gone badly." This representation was false and

5  constitutes a material omission. In fact, Mr. Ho made no investments by and through ECM-I, but

6  rather converted and concealed Mr. Bankart's money for his personal use.

7  168.  At all relevant times, Mr. Ho encouraged Mr. Bankart to "hang in there" and "be

8  patient" with his investment while, *ad interim,* the Defendants knew no investments were made.

9  These representations were false and constitute omissions of material facts.

10  169.  At all relevant times, the Defendants neglected, failed or otherwise refused, to

11  tell Mr. Bankart that the Defendants used Mr. Bankart's money to support their personal lifestyle.

12  170.  Mr. Bankart relied on the misrepresentations and the omissions of facts by Mr.

13  Ho in his decision to make the investment in ECM-I; and, later, to enter into the Settlement

14  Agreement and Note.

15  171.  The Defendants knew, or reasonably should have known, Mr. Bankart would

16  rely on their representations in making the $2,000,000.00 investment; and, later, entering into the

17  Settlement Agreement and Note.

18  172.  Mr. Bankart's reliance on the Defendants' statements was reasonable and

19  justifiable.

20  173.  As a result of Mr. Bankart's reasonable reliance on the representations and

21  omissions made by Mr. Ho, as set forth above, Mr. Bankart made the investments in ECM-I.

22  174.  The representations and omissions set forth above and made by Mr. Ho were

23  false.

24  175.  Mrs. Ho ratified Mr. Ho's illegal conduct by her willful and knowing acceptance

25  and receipt of illegal funds from ECM-I, the original source of which was Mr. Bankart's money.

26

176. The representations and omissions set forth above and made by Mr. Ho were material to Mr. Bankart's decision to invest in ECM-I.

177. Mr. Ho made the aforesaid misrepresentations and material omissions referenced above with the intent that Mr. Bankart would act upon Mr. Ho's misrepresentations and omissions by making an investment in ECM-I; and, later, the Defendants intended that Mr. Bankart would act upon the Defendants misrepresentations and omissions by entering into the Settlement Agreement and Note.

178. Mr. Bankart did not know that any of the above representations were false and/or contained omissions of material fact until after he made the $2,000,000.00 investment; and, later, after he executed the Settlement Agreement and Note.

179. At all relevant times, the Defendants knew that all the representations and omissions of material fact set forth above were false.

180. Mr. Bankart would not have made the investments if he had known the truth regarding these representations and omissions.

181. Mr. Bankart would not have entered into the Settlement Agreement had Mr. Bankart known the Defendants had illegally converted Mr. Bankart's investment for their own personal use.

182. As a direct and proximate result of the false representations, omissions and actions of the Defendants, Mr. Bankart has suffered substantial damages of financial loss in an aggregate amount, as of the Petition Date, of not less than $2,824,652.39, plus interest, attorneys' fees and costs.

183. Section 523(a)(2)(A) provides that a Defendant is not discharged from any debt to the extent the money received was obtained by false pretenses, false representations, or actual fraud.

184. Based upon the above, the Defendants' acts constitute the "receipt of money or property by false pretense, false representation or fraud" as set forth in 11 U.S.C. § 523(a)(2)(A).

185.    The Defendants' liability to Mr. Bankart based on fraud has been established by the entry of the Judgment to which res judicata and collateral estoppel attach in this proceeding.

186.    Wherefore, Mr. Bankart is entitled to an award of damages in the aggregate amount of the outstanding balance of the Note, plus interest, costs and attorneys' fees; and, a Judgment by this Court declaring those damages to be nondischargeable under 11 U.S.C. § 523(a)(2)(A).

<u>**COUNT II**</u>

Issuing A Materially False Written Statement
11 U.S.C. §523(a)(2)(B)

187.    The Plaintiff repeats and incorporates by reference the allegations set forth in each of the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

188.    Mr. Ho used written statements, including the securities-subscription agreement, certain email communications and the Settlement Agreement, to make the false representations referenced above and others in order to induce Mr. Bankart to (i) invest in ECM-I; and, subsequently, to (ii) execute the Settlement Agreement and Note.

189.    The written statements by Mr. Ho were materially false and contained material omissions intended by the Defendants to deceive Mr. Bankart of the Defendants' illegal conduct – *namely,* Mr. Ho represented that (i) ECM-I had $50,000,000.00 already in hand to fund ECM-I's operations and investments; that (ii) ECM-I had lost Mr. Bankart's $2,000,000.00 investment; and, that (iii) Mr. Ho was insolvent and without funds to make payments on the agreed upon Note. All of these written representations, and material omissions, were false.

190.    Mr. Ho was aware the written statements were false and contained material omissions at the time the statements and writings were made.

191.     Mr. Ho caused those written statements to be made or published with (i) the intent to deceive Mr. Bankart; (ii) to lure Mr. Bankart into the Settlement Agreement and Note; and, (iii) to cause Mr. Bankart to delay bringing suit against the Defendants.

192.     Mr. Ho's written misrepresentations constitute illegal acts in furtherance of a pattern of deception to hinder and delay Mr. Bankart's recovery.

193.     Based upon the above, Mr. Ho's acts constitute the use of a statement in writing that is materially false regarding the Defendants' or insiders' financial condition on which Mr. Bankart reasonably relied, and which Mr. Ho caused to be made or published with intent to deceive.

194.     The Defendants' liability to Mr. Bankart based on fraud has been established by the entry of the Judgment to which res judicata and collateral estoppel attach in this proceeding.

195.     Wherefore, Mr. Bankart is entitled to an award of damages in the aggregate amount of the outstanding balance of the Note, plus interest, costs and attorneys' fees; and, a Judgment by this Court declaring those damages to be nondischargeable under 11 U.S.C. § 523(a)(2)(B).

**COUNT III**
Fraud While Acting in Fiduciary Capacity and Embezzlement
11 U.S.C. §523(a)(4)

196.     The Plaintiff repeats and incorporates by reference the allegations set forth in each of the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

197.     Mr. Ho held himself out and represented to Mr. Bankart that he had superior knowledge and expertise in the investment Mr. Bankart was making.

198.     As a direct result of Mr. Ho's representations, Mr. Bankart trusted Mr. Ho, and reposed confidence in Mr. Ho, and entrusted his $2,000,000.00 investment to Mr. Ho and ECM-I

with the understanding Mr. Ho would invest the $2,000,000.00 with the $50,000,000.00 that Mr. Ho supposedly already had at his disposal.

199.    At all relevant times, Mr. Ho *solely* and *exclusively* managed and controlled ECM and ECM-I, and the affiliated Ho Entities.

200.    On April 11, 2006, Mr. Bankart became a member of ECM-I having a thirty-five (35%) interest therein pursuant to the express terms of the ECM-I Subscription Agreement. A true and accurate copy of the Subscription Agreement is attached hereto as Exhibit E.

201.    At all relevant times, on the foregoing facts, a special and/or fiduciary relationship was created by and between Mr. Ho and Mr. Bankart from which Mr. Ho owed Mr. Bankart a fiduciary duty to carry out the affairs and operations of ECM-I in good faith, devoid of *self*-dealing, deceit, embezzlement and fraudulent conduct.

202.    Mr. Ho breached his fiduciary duties to Mr. Bankart by misappropriating, converting and concealing Mr. Bankart's $2,000,000.00 to Mr. Ho's personal bank accounts, for his personal use.

203.    Mr. Ho committed fraud in his capacity as a fiduciary to Mr. Bankart when Mr. Ho solicited, misappropriated, converted and concealed Mr. Bankart's $2,000,000.00 investment in ECM-I by embezzling Mr. Bankart's funds.

204.    At all relevant times, Mrs. Ho ratified and participated in the ill-gotten gains of Mr. Ho's illegal conduct by willfully and knowingly accepting cash and cash equivalents from Mr. Ho and/or ECM-I to support her lifestyle and personal expenses.

205.    The Defendants have refused to provide any accounting to Mr. Bankart for their use of Mr. Bankart's $2,000,000.00; and, the Defendants have refused to tell Mr. Bankart where his money is at present, or otherwise how it was spent.

206.    The Defendants' wrongful acts of inducing Mr. Bankart to enter into the Settlement Agreement and Note, without any intention to make payments thereon, despite the

ability to do so, is deceptive conduct in furtherance of a pattern of illegal conduct to further hinder and delay Mr. Bankart's rightful recovery.

207. The Debt owed to Mr. Bankart, and interest and expenses arising therefrom, was obtained by fraud and/or defalcation while Mr. Ho was acting in a fiduciary capacity and therefore constitutes embezzlement and/or larceny.

208. The Defendants' liability to Mr. Bankart based on fraud has been established by the entry of the Judgment to which res judicata and collateral estoppel attach in this proceeding.

209. Wherefore, Mr. Bankart is entitled to an award of damages in the aggregate amount of the outstanding balance of the Note, plus interest, costs and attorneys' fees; and, a Judgment by this Court declaring those damages to be nondischargeable under 11 U.S.C. §523(a)(4).

**COUNT IV**
Willful Injury by Defendant to Another
11 U.S.C. §523(a)(6)

210. The Plaintiff repeats and incorporates by reference the allegations set forth in each of the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

211. As set forth more fully above, Defendants have willfully and maliciously injured Mr. Bankart and his property by soliciting, obtaining, misappropriating, embezzling, converting and concealing $2,000,000.00 belonging to Mr. Bankart, without Mr. Bankart's knowledge or consent, for the Defendants' own personal gain, without any regard for Mr. Bankart, and then refused to explain what happened to the money.

212. The Defendants' willful and malicious conduct consisted of, inter alia, (i) embezzling Mr. Bankart's $2,000,000.00 investment from ECM-I; and, then (ii) concealing the whereabouts of Mr. Bankart's money; and, then (iii) inducing Mr. Bankart into the Note

agreement while *ad interim* knowing they had no intention to repay the Note, as evidenced by the Defendants' failure to make even one payment, despite their ability to do so.

213. The Defendants acted willfully and maliciously with the intent to deceive Mr. Bankart.

214. The Defendants acted willfully and maliciously with the intent to and did, in fact, convert and deprive Mr. Bankart of his $2,000,000.00.

215. The Defendants acted willfully and maliciously with the intent to cause the consequences of their wrongful act – *namely,* to deprive Mr. Bankart of his $2,000,000.00 and, to use that money for their own personal lifestyle, and did, in fact, us the money in a manner not authorized by Mr. Bankart for their own personal benefit.

216. Mr. Bankart would not have (i) invested in ECM-I if Mr. Ho had represented the true facts – *namely,* that Mr. Ho never intended to invest Mr. Bankart's money, but rather intended to embezzle, convert and conceal the money from Mr. Bankart; nor would Mr. Bankart have, (ii) entered into the Settlement Agreement or Note had he known the Defendants had no intention of making any payments on the Note.

217. The Defendants intended that Mr. Bankart would rely on their knowing and willful false representations.

218. Mr. Bankart relied on the Defendants' false representations.

219. The Defendants' willful and malicious acts caused injury to Mr. Bankart, and his family.

220. The Defendants benefitted as a result of their willful and malicious actions.

221. The Defendants' conduct herein constitutes willful and malicious acts in furtherance of an ongoing pattern of deception to damage Mr. Bankart and hinder and delay his recovery.

222. The Defendants have injured, and continue to injure, Mr. Bankart by the (i) loss of the money, (ii) emotional distress, and (iii) ongoing attorney fees, costs and expenses.

223.    Mr. Bankart's damages are a direct result of the Defendants' willful and malicious actions.

224.    The Defendants' liability to Mr. Bankart based on willful injury by fraud has been established by the entry of the Judgment to which res judicata and collateral estoppel attach in this proceeding.

225.    Wherefore, Mr. Bankart is entitled to an award of damages in the aggregate amount of the outstanding balance of the Note, plus interest, costs and attorneys' fees; and, a Judgment by this Court declaring those damages to be nondischargeable under 11 USC § 523(a)(6).

## COUNT V
Violation of State and Federal Securities Laws
11 U.S.C. §523(a)(19)(A)&(B)

226.    The Plaintiff repeats and incorporates by reference the allegations set forth in each of the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

227.    The investment in ECM-I sold to Mr. Bankart was a security instrument under state and federal law

228.    The investment in ECM-I was offered and sold to Mr. Bankart.

229.    Mr. Ho participated in, induced, and made the unregistered security sale through which Mr. Bankart invested.

230.    ECM-I participated in, induced, and made the unregistered security sale through which Mr. Bankart invested.

231.    The investment in ECM-I was sold through a deceptive course of business that violated A.R.S. §§ 44-1991(A)(1) and (3).

232.    The investment in ECM-I sold to Mr. Bankart was not registered under state or federal law, as required.

233.    The investment in ECM-I was sold in violation of A.R.S. §§ 44-1841 and 44-1842; and/or the Securities Act of 1933.

234.    Under A.R.S. § 44-1999, Mr. Ho is a controlling person of ECM-I.

235.    Facilities of interstate commerce were used in connection with the offer and sale of the investment in ECM-I.

236.    At all relevant times, Mr. Ho was not registered under state or federal law to sell the investment(s) in ECM-I.

237.    At all relevant times, ECM-I was not registered under state or federal law to sell the investment(s) in ECM-I.

238.    Under A.R.S. § 44-2001(A), Mr. Bankart is entitled to the return of his $2,000,000.00, plus interest at ten percent (10%) per annum, and attorney fees and costs.

239.    No part of Mr. Bankart's $2,000,000.00, or accrued interest thereon, or attorney fees and costs, have been returned, or repaid.

240.    Mr. Ho misled Mr. Bankart about his intentions and misrepresented the existence of $50,000,000.00 that supposedly had already been committed by another investor, and was available to invest in Mr. Ho's investment scheme. In reality, Mr. Ho never actually had any $50,000,000.00 commitment, "other" investor, and never received the $50,000,000.00.

241.    The Debt owed to Mr. Bankart, and interest and expenses arising therefrom, were obtained by false pretense, false representation, and/or actual fraud in violation of state and federal securities laws.

242.    The Debt owed to Mr. Bankart, and interest and expenses arising therefrom, result from a judgment, order, consent order, decree or settlement agreement relating to fraud in violation of state and federal securities laws.

243.    The Defendants' liability to Mr. Bankart is based on violations of securities laws and has been established by the entry of the Judgment to which res judicata and collateral estoppel attaches in this proceeding.

244. Wherefore, Mr. Bankart is entitled to an award of damages in the aggregate amount of the outstanding balance of the Note, plus interest, costs and attorneys' fees; and, a Judgment by this Court declaring those damages to be nondischargeable under 11 U.S.C §523(a)(19), *et. seq.*

## CONCLUSION

**WHEREFORE**, the Plaintiff demands judgment against Defendants as follows:

(a)     On Count I, declaring Mr. Ho's wrongful conduct constitutes the receipt of money or property by fraud, misrepresentation and/or false pretenses under 11 U.S.C. § 523(a)(2)(A); and,

(b)     On Count II, declaring the Debt owed the Plaintiff, and interest and expenses arising therefrom, resulted from the Defendants' conduct of issuing false and misleading written statements with the intent to deceive, and did deceive, the Plaintiff under 11 U.S.C. § 523(a)(2)(B); and,

(c)     On Count III, declaring the Debt owed the Plaintiff, and interest and expenses arising therefrom, resulted from Defendants' fraudulent conduct, embezzlement and/or larceny, while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4); and,

(d)     On Count IV, declaring the Defendants did willfully cause injury to the property of the Plaintiff under 11 U.S.C. § 523(a)(6); and,

(e)     On Count V, declaring the Debt owed the Plaintiff, and interest and expenses arising therefrom, was obtained by false pretense, false representation, and/or actual fraud in violation of state and federal securities laws under 11 U.S.C. § 523(a)(19)(A)&(B); and,

(f)     On all Counts, declaring further damages in an amount to be proven at trial, but which are not less than $2,824,652.39, together with accrued interest thereon until paid in full, attorney fees costs and expenses, as provided by the Note and applicable law; and,

1    (g)    On all Counts, declaring the $2,824,652.39, together with accrued interest thereon

2    until paid in full, plus attorney fees and expenses arising therefrom, are non-dischargeable under

3    11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6) and (a)(19)(A) & (B)(i)(ii); and,

4    (h)    Awarding such other and further relief as the Court may deem just and proper.

5

6

7    **RESPECTFULLY SUBMITTED** this 21ᵗʰ day of August, 2014.

8

9                                          **TIFFANY & BOSCO, P.A.**

10

11                                     By: /s/ Christopher R. Kaup
                                            Christopher R. Kaup, Esq.
12                                          Third Floor Camelback Esplanade II
                                            2525 E. Camelback Road
13                                          Phoenix, Arizona 85016-4237

14                                     By: /s/ James R. Davis
                                            James R. Davis, Esq.
15                                          J. DAVIS LAW FIRM, P.C.
                                            BB&T Plaza, Mail Stop Box 16
16                                          234 Seven Farms Drive, Suite 211B
                                            Charleston, South Carolina 29492
17                                          *Admitted Pro Hac Vice*

18                                          *Attorneys for Alan J. Bankart*

19

20

21

22

23

24

25

26